Slip Op. 15 - 17

# UNITED STATES COURT OF INTERNATIONAL TRADE

OVAN INTERNATIONAL, LTD. and BSS AUTOMOTIVE GROUP, INC., d/b/a CARRIAGE HOUSE MOTOR CARS,

Plaintiffs,

v.

UNITED STATES,

Defendant.

Before: R. Kenton Musgrave, Senior Judge

Court No. 13-00390

## OPINION

[Plaintiff Ovan International Ltd. dismissed for lack of standing; action dismissed for lack of subject matter jurisdiction in absence of valid timely protest.]

Dated: February 23, 2015

*Julius W. Cohn*, Cohn & Spector, of White Plains, NY, for the plaintiffs.

*Alexander J. Vanderweide*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the defendant. On the brief were *Stuart F. Delery*, Assistant Attorney General and *Amy M. Rubin*, Assistant Director. Of Counsel on the brief was *Yelena Slepak*, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington DC.

Musgrave, Senior Judge: This matter is before the court on a motion for summary judgment[1] submitted by the plaintiffs Ovan International Ltd. ("Ovan") and BBS Automotive Group, Inc. ("Carriage House") and a cross-motion for judgment on the pleadings filed by the defendant

[1] *See* Pl's Mot. for Summary Judgment, PDoc 11 (June 5, 2014) ("Pl's Mot.").

United States in opposition to the plaintiffs' motion.[2] As discussed below, the plaintiff Ovan lacks standing to commence this action under 28 U.S.C. §2631 and must be dismissed from the case. The remaining plaintiff, Carriage House, failed to file a valid timely protest with U.S. Customs and Border Protection ("Customs") prior to commencing the action and as a result has not satisfied the jurisdictional requirements. Accordingly, the court must grant the defendant's cross-motion and deny the plaintiffs' motion.

I . *Background*

Carriage House is the owner of the merchandise at issue, a 1958 Rolls Royce Silver Cloud motor vehicle ("subject vehicle"). The complaint challenges Customs' determination that a protest filed with respect to duties imposed upon the re-importation of the subject vehicle was not valid.[3] The subject vehicle was first imported into the U.S. in the 1970's and was transferred at the then-owner's death to his son.[4] On February 20, 2007, Carriage House purchased the subject vehicle from the son and transferred it to its affiliate, Auto Style Leasing, Ltd. ("Auto Style").[5]

According to the papers, the subject vehicle was exported from the U.S. to the United Kingdom in March 2012 to be sold by auction house RM Auctions at an auction taking place

---

[2] *See* Def's Cross-Mot. for Judgment on the Pleadings, PDoc12 (July 10, 2014) ("Def's Mot.").

[3] Complaint, PDoc 4 (Dec. 4, 2013) ("Compl.") ¶¶ 2, 3.

[4] *See* Compl. at Exhibit A, Affidavit of Michael Schudroff, President and sole shareholder of Carriage House and Auto Style Leasing, Ltd. and accompanying Exhibits A-F (Apr. 8, 2013) ("Schudroff Affidavit") ¶ 2.

[5] The plaintiff states that Carriage House is a corporation that operates as a licensed automotive dealer and Auto Style is a corporation that operates as a licensed automobile leasing dealer, both of which Michael Schudroff serves as the sole shareholder and President. Schudroff Affidavit ¶¶ 1, 3.

in Monaco on May 12, 2012. Compl. ¶ 4; Def's Mot. at 2. The subject vehicle was "transferred" back to Carriage House on April 3, 2012 prior to shipment.[6] RM Auctions hired Schumacher Cargo Logistics to arrange shipment of the subject vehicle which in turn used Ovan as its customs broker. Schudroff Affidavit ¶ 9; Def's Mot. at 2. The subject vehicle did not sell at auction and was returned to Carriage House in the U.S. by RM Auctions using Ovan as the importer. Compl. ¶¶ 5-6; Schudroff Affidavit ¶¶ 11-12, and at Exhibit E; Def's Mot. at 2.

The subject vehicle was imported under cover of Entry No. EJG-0229816-0 with the relevant customs entry form dated July 11, 2012 listing Ovan as the importer of record and Carriage House as the consignee. Compl. ¶ 6; Answer, PDoc 9 (April 11, 2014) ("Answer") ¶ 6. On the entry form, Ovan entered the subject vehicle under Harmonized Tariff Schedule of the United States ("HTSUS") subheading 9801.00.25, a duty-free provision.[7] On August 14, 2012, Customs issued Ovan a Notice of Action stating that the subject vehicle did not qualify for duty-free treatment and would be classified under HTSUS subheading 8703.23.00 at liquidation.[8]

---

[6] The court notes that the referenced date is inherently contradictory to the date of export cited by the plaintiffs and the defendant but finds it unnecessary to resolve the contradiction for purposes of this case. *See* Compl. ¶ 4, and Def's Mot. at 2; *but see* Schudroff Affidavit ¶ 7, referencing Exhibit C, and at Exhibit D.

[7] *See* Def's Mot. at 1, referencing Entry Papers. HTSUS subheading 9801.00.25 provides for:

> Articles, previously imported, with respect to which the duty was paid upon such previous importation if (1) exported within three years after the date of such previous importation, (2) reimported without having been advanced in value or improved in condition by any process of manufacture or other means while abroad, (3) reimported for the reason that such articles do not conform to sample or specifications, and (4) reimported by or for the account of the person who imported them into, and exported them from, the United States.

[8] *See* Compl. ¶ 7; *see also* Answer ¶ 7; Schudroff Affidavit at Exhibit E "Notice of Action".

(continued...)

On January 23 and February 11, 2013, plaintiffs' counsel wrote to Customs Entry Specialist and Team Leader Curtis W. Gilbert concerning the subject vehicle. On February 14, 2013, Supervisory Entry Officer Evan Johnson ("Johnson") and Officer Pearlman of Customs called plaintiffs' counsel and requested that he email additional information to Johnson concerning the subject vehicle. Compl. ¶ 8; Answer ¶ 8.

The plaintiffs aver that on February 22, 2013, Customs liquidated the entry ("liquidation date") of the subject vehicle under HTSUS subheading 8703.23.00 with a duty rate of 2.5% *ad valorem.* Compl. ¶ 3. On April 9, 2013, or 46 days after liquidation, plaintiffs' counsel emailed a sworn affidavit of Michael Schudroff, the president and sole shareholder of Carriage House, dated April 8, 2013 and six attached exhibits to Customs. The affidavit requested that Customs "waive and cancel all duty, interest and related charges relative to" the subject vehicle. Compl. ¶ 9; Schudroff Affidavit ¶¶ 1, 16. On June 24, 2013, plaintiffs' counsel emailed Johnson indicating that counsel had not received a response to the April 9, 2013 email containing the Schudroff Affidavit. Compl. ¶ 9; Answer ¶ 9. On August 30, 2013, or 189 days after liquidation, plaintiffs' counsel filed Protest No. 4601-13-101369 with Customs, via facsimile, on standard protest Form 19 against the liquidated entry. Compl. ¶ 12 and at Exhibit C; Answer ¶ 12. On October 11, 2013, Customs informed the plaintiff that protest No. 4601-13-101369 was denied as "untimely filed". Compl. ¶ 13 and at Exhibit D; Answer ¶ 24. On October 28, 2013, Ovan paid Customs $23,641.70 in tariffs and associated fees for the subject vehicle. Compl. ¶¶ 7, 14 and at

---

[8] (...continued)
8703.23.00, HTSUS, provides, in part, for "Motor cars and other motor vehicles principally designed for the transport of persons (other than those of heading 8702) . . . ", dutiable at 2.5% *ad valorem*.

Exhibit E; Answer ¶ 14. On December 4, 2013, plaintiffs' counsel filed a summons and complaint before this court. Compl.; Summons, PDoc 1 (Dec. 4, 2013).

The plaintiffs now move for summary judgment asking the court to find that the Schudroff Affidavit filed on April 9, 2013 constituted a valid timely protest and to annul the rejection of the purported protest by Customs. Pl's Mot. at 1, 3. The defendant cross-moves for judgment on the pleadings asking the court: (1) to dismiss Ovan as a plaintiff to this action averring that it lacks standing under 28 U.S.C. §2631, and (2) to dismiss the action for lack of subject matter jurisdiction under 28 U.S.C. §1581(a) because a valid timely protest was not filed, or if jurisdiction exists, (3) to dismiss the plaintiffs' complaint for failure to state a claim upon which relief can be granted because the complaint does not explicitly set forth the classification claim and because the subject vehicle fails to qualify for a duty exemption under HTSUS subheading 9801.00. Def's Mot. at 1-2, 4, 12-13.

## II. *Discussion*

### A. Ovan's Standing

Under 28 U.S.C. §2631(a) "[a] civil action contesting the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930 may be commenced in the Court of International Trade *by the person who filed the protest* pursuant to section 514 of such Act, *or by a surety on the transaction* which is the subject of the protest." (italics added). It was Carriage House, not Ovan, who filed both protest No. 4601-13-101369 and the Schudroff Affidavit. Ovan, further, is not a surety on the transaction.[9] Although the plaintiffs concede these facts, they still bid

[9] *See* Compl. ¶¶ 1-2 and at Exhibit C "Protest" (listing Carriage House as the "name ... of (continued...)

the court to find that Ovan has standing in this action, because Ovan was the Importer of Record listed on the entry summary, because Ovan was the agent for and was given power of attorney by Carriage House to deal with Customs on its behalf concerning the subject vehicle, and because Ovan provided payment to Customs on behalf of Carriage House for the tariff on the subject vehicle. *See* Compl. ¶ 1; *see also* Pl's Resp. at 1, referencing Schudroff Affidavit ¶ 10. The language of 28 U.S.C. §2631(a), however, is clear that to have standing to appeal a denied protest Ovan must have either filed the protest or have served as a surety on the transaction, neither of which it did. Ovan cites no case law to support its claims that an importer of record, an agent to or a party who is given power of attorney by the protestor, or a party who pays a tariff for the protestor but does not file the protest or is not a surety to the transaction, may be provided standing in an action concerning the denied protest.[10] Ovan, as a result, does not have standing to bring this action and must be dismissed as a plaintiff from the case.

---

[9] (...continued)
importer or other protesting party" for Protest No. 4601-13-101369); *see also* Pl's Response to Defendant's Cross-Motion for Judgment on the Pleadings, PDoc13 (Aug. 15, 2014) ("Pl's Resp.") at 1-2 (referring to the Schudroff Affidavit and stating that "Carriage House filed a timely protest on April 9, 2013 against the duties addressed on the subject entry").

[10] Further, since 28 U.S.C. §2631(j)(1) states that "[a]ny person who would be adversely affected or aggrieved by a decision in a civil action pending in the Court of International Trade may, by leave of court, intervene in such action, except that -- (A) no person may intervene in a civil action under section 515 or 516 of the Tariff Act of 1930", and since the contested denial of a protest is being brought before the court under section 515 of the Tariff Act of 1930, Ovan, accordingly, is also barred from intervening in the action.

B. Timeliness and Validity of a 19 U.S.C. §1514 Protest

Concerning the court's jurisdiction to consider the claim of the remaining plaintiff, Carriage House, the court has jurisdiction over "any civil action commenced to contest the denial of a protest [before customs], in whole or in part". 28 U.S.C. §1581(a). This jurisdiction, however, is limited to appeals of valid and timely protests that have been denied by Customs.[11] Pursuant to 19 U.S.C. §§ 1514(a) and 1514(c)(3), to be timely a protest must be filed within 180 days after the date of liquidation. Although protests are to be construed liberally,[12] "[t]he requirements for a valid protest are contained in section 1514(c)(1) and the implementing regulation [19 C.F.R. § 174.13(a)] . . . [and] are mandatory". *Koike*, *supra*, 165 F.3d at 908-09 (finding that the court does not have jurisdiction "over protests that do not satisfy the requirements of 19 U.S.C. §1514(c)(1) *and* 19 C.F.R. §174.13(a)", even considering that the consequence of failing to comply with the requirements is "harsh") (italics added). 19 U.S.C. §1514 (c)(1) (2006) currently requires that:

> A protest of a decision made under subsection (a) of this section shall be filed in writing, or transmitted electronically pursuant to an electronic data interchange system, in accordance with regulations prescribed by the Secretary. A protest must set forth distinctly and specifically--
>
> (A) each decision described in subsection (a) of this section as to which

[11] *See* 28 U.S.C. §1581(a); *see also* 28 U.S.C. §2636(a); 19 U.S.C. §1514; *Koike Aronson, Inc. v. United States*, 165 F.3d 906, 908 (Fed. Cir. 1999) ("*Koike*") ("By its terms, section 1581(a) limits the jurisdiction of the Court of International Trade to appeals from denials of valid protests."), referencing *Computime, Inc. v. United States*, 772 F.2d 874, 875 (Fed. Cir.1985) ("*Computime Inc.*"), and *Washington Int'l Ins. Co. v. United States,* 16 CIT 599, 601 (1992) ("*Washington Int'l Ins. Co.*") ("A prerequisite, therefore, to jurisdiction by the court over an action of this nature is a denial of a valid protest.").

[12] *See e.g.*, *XL Specialty Ins. Co. v. United States*, 28 CIT 858, 870, 341 F. Supp. 2d 1251, 1259 (2004) ("*XL Specialty Ins. Co.*"), referencing *Mattel, Inc. v. United States*, 72 Cust. Ct. 257, 262, 377 F. Supp. 955, 960 (1974) ("*Mattel*"); *see also Washington Int'l Ins. Co.*, *supra*, 16 CIT 599 at 603-04, referencing *CR Industries v. United States*, 10 CIT 561, 564 (1986).

> protest is made;
> (B) each category of merchandise affected by each decision set forth under paragraph (1);
> (C) the nature of each objection and the reasons therefor; and
> (D) any other matter required by the Secretary by regulation.

19 U.S.C. §1514(c)(1). Under authority granted by the statute, Customs has implemented further requirements for a valid protest through its regulations. 19 C.F.R. §174.13(a) addresses the general content of a valid protest and requires as follows:

> A protest shall contain the following information:
> (1) The name and address of the protestant, i.e., the importer of record or consignee, and the name and address of his agent or attorney if signed by one of these;
> (2) The importer number of the protestant. If the protestant is represented by an agent having power of attorney, the importer number of the agent shall also be shown;
> (3) The number and date of the entry;
> (4) The date of liquidation of the entry, or the date of a decision not involving a liquidation or reliquidation;
> (5) A specific description of the merchandise affected by the decision as to which protest is made;
> (6) The nature of, and justification for the objection set forth distinctly and specifically with respect to each category, payment, claim, decision, or refusal;
> (7) The date of receipt and protest number of any protest previously filed that is the subject of a pending application for further review pursuant to subpart C of this part and that is alleged to involve the same merchandise and the same issues, if the protesting party requests disposition in accordance with the action taken on such previously filed protest;
> (8) If another party has not filed a timely protest, the surety's protest shall certify that the protest is not being filed collusively to extend another authorized person's time to protest; and
> (9) A declaration, to the best of the protestant's knowledge, as to whether the entry is the subject of drawback, or whether the entry has been referenced on a certificate of delivery or certificate of manufacture and delivery so as to enable a party to make such entry the subject of drawback (see §§ 181.50(b) and 191.81(b) of this chapter).

19 C.F.R. §174.13(a). 19 C.F.R. §174.12(b) addresses the form and number of copies that must be filed with Customs when protesting a decision and requires as follows:

> A written protest against a decision of [Customs] must be filed in quadruplicate on [Customs] Form 19 or a form of the same size clearly labeled "Protest" and setting

> forth the same content in its entirety, in the same order, addressed to [Customs]. All schedules or other attachments to a protest (other than samples or similar exhibits) must also be filed in quadruplicate. A protest against a decision of [Customs] may also be transmitted electronically pursuant to any electronic data interchange system authorized by [Customs] for that purpose. Electronic submissions are not required to be filed in quadruplicate.

19 C.F.R. §174.12(b).

To be considered valid and timely Carriage House's protest must have been filed on or before August 21, 2013, within 180 days of the February 22, 2013 liquidation date, and met the regulatory and statutory requirements for a protest. Protest No. 4601-13-101369 was received by Customs on August 30, 2013, 189 days after the liquidation date, and was accordingly untimely. Compl. ¶¶ 12, 13, and at Exhibit C; Answer ¶¶ 12, 13, 16. Carriage House maintains that the Schudroff Affidavit, which was emailed to Johnson on April 9, 2013, or 46 days after the liquidation date, constitutes a timely valid protest as it was filed within the required time for a protest and meets all of the statutory and regulatory requirements for validity. *See* Compl. ¶¶ 8-11; *see also* Pl's Mot. at 1-3; Pl's Resp. at 2, 4. While the Schudroff Affidavit was submitted to Customs within the appropriate protest time period and meets most of the statutory and regulatory requirements for a valid protest, even when read collectively and liberally it fails to meet "all" of the requirements. In particular, the purported protest was not submitted to Customs pursuant to "any electronic data interchange system authorized by [Customs] for that purpose" (*i.e.*, for the time being the Customs Automatic Broker Interface ("Customs ABI")) or on Customs standard protest Form 19, it was not clearly labeled "protest", and it did not list the liquidation date of the subject entry.[13]

---

[13] *See* Def's Mot. at 10-11 ("[t]he only electronic data interchange system authorized by Customs is the [Customs ABI], which is used by brokers to transmit protests to Customs"); *see also* (continued...)

Carriage House maintains that the Schudroff Affidavit is a "clear protest". Specifically, it argues that unlike protests that were rejected by courts for being insufficient on the ground that "no possible construction of the language" could provide a Customs official sufficient information "such that the official could correct any mistakes in liquidation", the affidavit states the requirements for the relevant HTSUS subheading, the grounds for objecting, and the classification to which objection is raised. *See* Pl's Resp. at 4-5, referencing *XL Speciality Ins. Co.*, *supra*, 28 CIT at 869, 341 F. Supp. 2d at 1260. Carriage House further maintains that courts do not require a special form nor technical precision for protests to be considered valid, only that the protest be "distinct and specific enough to show that the objection taken . . . was at the time of filing the protest in the mind of the importer and sufficient to notify the collector of its true nature and character to the end that he might then ascertain the precise facts and have adequate opportunity to correct

---

[13] (...continued)
Defendant's Reply to Plaintiffs' Response to the Defendant's Cross-Motion for Judgment on the Pleadings, PDoc 16 (Sept. 9, 2014) at 2-5; Defendant's Supplemental Response, PDoc 19 (Nov. 20, 2014) at 1. The court emphasizes here, however, that the Schudroff Affidavit meets the remaining relevant regulatory and statutory requirements for a valid protest. 19 U.S.C. §1514(c) requirements were "distinctly and specifically" met by listing: (A) the rate advance to which the subject vehicle was subject to, the customs decision as to which the protest was being made, and the relevant provisions of the HTSUS, *see* Schudroff Affidavit at Exhibit E "Notice of Action"; (B) the category of merchandise affected, *see id.* ¶ 1 and Exhibit E "Notice of Action"; and (C) the nature of the objection and reasons for objecting, *see id.* ¶¶ 13, 14, 15 and Exhibit F. Further, the 19 C.F.R. §174.13(a)(1)-(6) requirements, invoked by 19 U.S.C. §1514(c)(1)(D), were met by listing: (1) the name and address of the protestant Carriage House who was the consignee to the transaction, *see id.* ¶ 1 and at Exhibit E "Entry Summary"; (2) consignee number of the protestant and the importer number of the agent with power of attorney of the protestant, *see id.* at Exhibit E "Entry Summary"; (3) the date of entry and the entry number, *see id.* at Exhibit E "Notice of Action"; (5) a description of the merchandise, *see id.* ¶ 1 and at Exhibits A, B at Sec. 1, C at Sec. 1, D at "Description of Commodities", E "Entry Summary", and F; and (6) the nature of, justification for the objection with respect to each category, payment, claim, decision or refusal, *see id.* at ¶¶ 1-16 and Exhibit F.

mistakes and cure defects." Pl's Mot. at 1-2, referencing, *e.g.*, *United States v. M. Rice & Co.*, 257 U.S. 536, 539-40 (1922) ("*M. Rice & Co.*").

The cases to which Carriage House cites,[14] however, predate revisions to 19 U.S.C. §1514(c)(1) that provide clear authority to Customs to establish additional regulatory requirements for protests. *See* 19 U.S.C. §1514(c)(1)(D) ("any other matter required by the Secretary by regulation"). While protests may have been construed generously in the past,[15] the Federal Circuit more recently affirmed that a court does not have jurisdiction over protests that do not satisfy all of the requirements of 19 U.S.C. §1514(c)(1) and 19 C.F.R. §174.13(a), and has declined to find a protest was valid merely because the court (or even a Customs official) could reasonably deduce, from the surrounding circumstances, that Customs was aware of the substance of the protesting party's claim when the party failed to comply with the relevant statute and regulations. *See Koike*, *supra*, 165 F.3d at 908-09, referencing *Computime, Inc.*, *supra*, 772 F.2d at 875, and *Washington Int'l Insu. Co.*, *supra*, 16 CIT at 601.

---

[14] Pl's Mot. at 1-2, referencing *M. Rice & Co., supra*, 257 U.S. at 539-40 (not requiring any particular form for a valid protest), and *Davies v. Arthur,* 96 U.S. 148, 151 (1877) ("*Davies*") (stating that technical precision is not required for a valid protest), and *Schell's Executors v. Fauche*, 138 U.S. 562, 569 (1891) (finding that a briefly stated protest which "indicates to an intelligent man the ground of the importer's objection to the duty levied upon the articles" should not be rejected).

[15] *See*, *e.g.*, *Mattel, Inc.*, *supra*, 72 Cust. Ct. at 258-62, 266, 377 F. Supp. at 957-60, 963 (internal citations omitted) (finding that letters which included an IRS number, entry numbers, dates of entry and liquidation, category of merchandise, claimed tariff classification, tariff provision under which the merchandise was classified, rates of duty for conflicting provisions, and supporting authority, constituted a valid protest because the letters "clearly set forth the claim of the importer and were filed within the time required by section 514" but stating that "no formal rules have been devised for the manner in which such objections should be expressed"); *see also Eaton Mfg. Co. v. Untied States*, 60 C.C.P.A. 23, 30, 469 F.2d 1098, 1104 (1972).

The logic of *Koike* also applies to 19 C.F.R. §174.12, because that regulation also derives authority from 19 U.S.C. §1514(c)(1)(D). The Schudroff Affidavit emailed to a Customs official did not comply with the regulation's requirement that an electronic submission of a protest be filed via the electronic data interchange system authorized by Customs for protest submissions, currently the Customs ABI.[16] The Schudroff Affidavit also fails to satisfy the regulation's alternative filing requirements. While submitting a protest on Customs Form 19 is not mandatory, recent decisions of the court have consistently rejected claims of "protests" not submitted on Customs Form 19 that were missing, among other required regulatory and statutory information, a specific indication that the filing is in fact a protest, which is a further requirement under 19 C.F.R. §174.12(b).[17] Pointing out this requirement in *Ammex*, the court noted therein that "[u]nder existing and longstanding case law, a separate letter *containing the information required in the regulations*

---

[16] A 2011 amendment to 19 C.F.R. §174.12(b) stated that "written" protests must be submitted on Form 19 or on a "form of the same size clearly labeled 'protest'" in quadruplicate, but also permitted protests to be submitted "electronically", and required that protests submitted in this manner must be "transmitted pursuant to any electronic data interchange system authorized by [Customs] for that purpose. Electronic submissions are not required to be filed in quadruplicate."

[17] *See*, *e.g.*, *Puerto Rico Towing & Barge Co. v. United States*, Ct. No. 11-00438, Slip Op. 14-80 (July 10, 2014) ("*Puerto Rico Towing*") at 2-3, 9-10 (finding that the plaintiff's letters attached to an email sent to a Customs official failed to comply with several of the statutory and regulatory provisions including that "[n]either document was labeled as a protest, despite such a requirement in 19 C.F.R. §174.12(b), and the first letter does not even include the term"); *see also Chrysal USA*, *Inc. v. United States*, 36 CIT ___, 853 F. Supp. 2d 1314, 1319-20, 1324, 1326 (2012) ("*Chrysal USA*") (finding a physical letter mailed to Customs which was purported to be a protest failed to satisfy the mandatory statutory and regulatory requirements governing valid protests among them that the letter was "not labeled a 'protest,' nor [uses] that term" and that "[t]he letter thus is not designated as a 'protest'"); *Ammex, Inc. v. United States*, 27 CIT 1677, 1684-85, 288 F. Supp. 2d 1375, 1381-82 (2003) ("*Ammex*") (finding an objection included on entry papers did not constitute a protest because among other deficiencies the papers were not "sufficiently labeled as 'Protest' and addressed to the appropriate Customs official to satisfy the requirements of 19 C.F.R. §174.12(b)").

*and clearly labeled as a protest* . . . suffice[s] so long as the letter [is] in conformity with the importer's obligations under the statutory scheme and 'sufficient to notify the [duty] collector of [the objection's] true nature and character.'" *Ammex*, 27 CIT at 1686 n. 11, 288 F. Supp. 2d at 1382 n. 11 (italics added), quoting *Davies*, *supra*, 96 U.S. at 151. Like the letters purported to be protests in *Chrysal USA* and *Puerto Rico Towing* that were rejected for failing to satisfy the requirements of 19 C.F.R. §174.12(b), the Schudroff Affidavit was not submitted on Customs Form 19, was not labeled "protest", and did not reference the term "protest" at any point. The affidavit further was not submitted via the Customs ABI, and thus it fails to comply with the regulation.

The Schudroff Affidavit also does not contain the date of liquidation of the subject entry as is required by 19 C.F.R. §174.13(a)(4). In its supplemental filing, Carriage House both admits that the Schudroff Affidavit is missing this information and claims it is met by the inclusion of Exhibit E to the affidavit, *i.e.*, the "Notice of Action" Customs Form, at Box 12. Plaintiff's Supplemental Response, PDoc 18 (Nov. 12, 2014) at 2-3. In any event, Carriage House maintains that it is not the liquidation of the subject vehicle that is important but the "sufficiency of the protest itself", and it argues that the cases where courts have found protests to be insufficient "tend to turn on the lack of information of 19 C.F.R. §174.13 (a)(6)", information which the Schudroff Affidavit contains. *Id.*, referencing *Koike, supra*, 165 F.3d at 906, and *Ammex, supra*, 27 CIT at 1685, 288 F. Supp. 2d at 1381-82, and *Chrysal USA, supra*, 36 CIT at ___, 853 F. Supp. 2d at 1314. Carriage House further claims that because there is no dispute over the date of liquidation or the timeliness of filing of the Schudroff Affidavit, and because "all parties were at all times aware of the date and its importance and acted in accordance thereof", the absence of a liquidation date is inconsequential. *Id.* It is true that in each of the cases cited by Carriage House the courts determined that the claimed

protest was missing information required by 19 C.F.R. §174.13(a)(6), *i.e.*, "the nature of, and justification for the objection set forth distinctly and specifically with respect to each category, payment, claim, decision, or refusal", but the courts in those cases also determined further pieces of mandatory regulatory and statutory information were missing and held that all statutory and regulatory requirements must be met for a protest to be considered valid.[18] Although the parties in the present action do not dispute the date of liquidation or the timeliness of the Schudroff Affidavit, the liquidation date is not, contrary to Carriage Houses's claim, contained within Box 12 of the attached Notice of Action form, or indicated anywhere else in the Schudroff Affidavit for that matter. The absence of this information is not inconsequential, but instead must be held as amounting to a failure to meet a "mandatory" regulatory requirement for a valid protest as mandated by Federal Circuit precedent. *Koike*, *supra*, 165 F.3d at 909.

Carriage House also maintains that Customs was aware that the Schudroff Affidavit constituted a valid protest as a result of conversations Carriage House's counsel had with Customs

---

[18] *See Koike*, *supra*, 165 F.3d at 906, 908-09 (finding that a protest on a standard protest form that failed to include "the nature of each objection and the reasons therefor", the "justification for [each] objection set forth distinctly and specifically", and "does not even specify the tariff classifications that Koike would have Customs adopt in lieu of the classifications at which it was directed" was not a valid protest); *see also Ammex, supra*, 27 CIT 1677 at 1681-82, 1685-86, 288 F. Supp. 2d at 1379, 1381-82 (finding that entry papers with an included objection did not meet the mandatory statutory and regulatory requirements for a valid protest because the "paragraph . . . inserted on the entry papers could solely be viewed as an indication that a protest was about to follow (as opposed to constituting a valid protest in itself)", did not state the reasons or justifications for the objection as required by statute and regulation, and was not labeled "Protest" and addressed to the appropriate Customs official as required by regulation.); *Chrysal USA*, *supra*, 36 CIT at __, 853 F. Supp. 2d at 1321-22, 1324-26, 1330 (finding that the subject letter did not qualify as a protest because it did not include any of the "mandatory" elements for a valid protest required by statute and regulation including "the nature of [Chrysal's] objection and the reasons therefor" and the date of liquidation).

over emails and phone calls in which the basis of the dispute was set forth, and it claims that it submitted the Schudroff Affidavit in response to specific material Customs requested in those conversations. Pl's Mot. at 2; Compl. ¶¶ 8, 9, 10. Through these allegations Carriage House also appears to raise facts relevant to a claim of detrimental reliance upon advice provided by Customs' officials in those conversations as to what they required a document contain in order to constitute a valid protest.[19] However, in other places in its papers Carriage House states that it is

> not relying on the discussions Plaintiffs and Plaintiffs' counsel engaged in with [Customs], extensive though they may have been, to act as notice of Plaintiffs' protest. Plaintiffs are [here] instead relying on the fact that the Schudroff Affidavit and the exhibits annexed thereto contain far more information than is requested on the [Customs]'s own protest form, that being [Customs] Form 19, and meet the qualifications enunciated by statute with requisite specificity.

Pl's Resp. at 4. In any event, the alleged dialogue with Customs cannot be used to cure the defects of the Schudroff Affidavit to satisfy the statutory and regulatory requirements for a valid protest. The test for determining the validity of a protest is objective and independent of a Customs official's subjective reaction to the purported protest.[20] In *Koike,* the Federal Circuit rejected a similar argument that "a protest is valid if a court can surmise, from the surrounding circumstances, that Customs was aware of the substance of the protesting party's claim" and held that Customs' actual knowledge of the plaintiff's position, both "through prior discussions" and through "pre-protest

---

[19] *See* Pl's Mot. at 2, referencing Exhibit C and D, and Compl. at Exhibit A and B ("Here Plaintiffs, through counsel, engaged in considerable dialogue by email and phone with [Customs] representatives in the months following the entry date wherein the basis of the dispute was set forth . . . . Following such conversations, wherein specific material was *requested* by [Customs] representatives, [plaintiffs' attorney] submitted [the Schudroff Affidavit] on April 9, 2013, forty-six days after the liquidation date of February 22, 2013.") (plaintiffs' italics).

[20] *See e.g.*, *XL Specialty Ins. Co.*, *supra*, 28 CIT 858 at 870, 341 F. Supp. 2d at 1261, referencing *Sony Elecs., Inc. v. United States*, 26 CIT 286, 287 (2002).

correspondence," was irrelevant to an analysis of the sufficiency of the protest. *See Koike*, *supra*, 165 F.3d at 908-09.

Nor can the affidavit be considered a protest on the ground that there is nothing in the submission "that would suggest the Plaintiffs are merely putting a collector on notice of filing a protest". *See* Pl's Resp. at 4-5. Courts have rejected as "protests" communications that only put the collector on notice that a protest will follow,[21] but the mere lack of such an indication in the Schudroff Affidavit does not in turn qualify it as a valid protest or indicate to Customs that it is intended as an official protest under 19 U.S.C. §1514. In the past, the court could have readily concluded that the Schudroff Affidavit constituted a valid protest, but at present, in order for it to be a valid protest the Schudroff Affidavit must have met all of the "straightforward" and "not difficult to satisfy" mandatory statutory and regulatory requirements governing the validity of a protest, which it did not. *See Koike*, *supra*, 165 F.3d at 909. Because the affidavit was not filed via the Customs ABI, was not filed on Customs Protest Form 19 or labeled "protest", did not include the liquidation date, and was submitted "at the peril that the collector [would] not consider the [filing] as a protest",[22] even if it was timely it must be held invalid as a "protest" because it fails "to satisfy the regulatory or statutory requirements of validity" as strictly required by our appellate court. *Koike*, *supra*, 165 F.3d at 908.

---

[21] *See Continental Ore Corp. v. United States*, 67 Cust. Ct. 202, 205-06, 331 F. Supp. 1060, 1063-64 (1971) ("*Continental Ore*"); *see also Puerto Rico Towing*, *supra*, Slip Op. 14-80 at 10-11; *Ammex, supra*, 27 CIT at 1682, 1686, 288 F. Supp. 2d at 1383.

[22] *See Continental Ore Corp*, *supra*, 67 Cust. Ct. at 203-05, 331 F.Supp. at 1062-64.

Because the court has determined that a valid timely protest was not filed under 19 U.S.C. §1514(c)(1) and the applicable regulations, it need not reach the question of whether the plaintiff has stated a valid claim upon which relief can be granted or if the subject vehicle qualifies for duty free treatment under HTSUS subheading 9801.00.

## IV. *Conclusion*

Plaintiff Ovan did not file the protest at issue and is not a surety on the transaction and as a result must be dismissed as a plaintiff from the case. The remaining plaintiff Carriage House failed to meet the jurisdictional requirement of filing a valid timely protest with Customs against the duties assessed on the subject entry, and the court must dismiss the case for lack of subject matter jurisdiction. Judgment will enter accordingly.

/s/ R. Kenton Musgrave
R. Kenton Musgrave, Senior Judge

Dated: February 23, 2015
New York, New York